MELINDA HAAG (CABN 132612)
United States Attorney

J. DOUGLAS WILSON (DCBN 412811)
Chief, Criminal Division

ANDREW M. SCOBLE (CABN 124940)
MATTHEW L. McCARTHY (CABN 217871)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7200
    FAX: (415) 436-7234
    Matthew.mccarthy@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. CR 11-0293 CRB |
|     Plaintiff, | CR 11-0506 CRB |
|   v. | UNITED STATES' SENTENCING MEMORANDUM |
| LUIS AMILAR-ZANAS, | |
|     Defendant. | |

## INTRODUCTION

Defendant Luis Amilar-Zanas pleaded guilty in Case CR 11-0293 to Racketeering Conspiracy in violation of 18 U.S.C. § 1962(d) and 18 U.S.C. § 2 (Count I) and Carrying and Using a Firearm During and in Relation to a Crime of Violence Resulting in Death in violation of 18 U.S.C. § 924(j)(1) (Count V). He pleaded guilty in Case CR 11-0506 to Illegal Reentry Following Deportation in violation of 8 U.S.C. § 1326(a) and (b)(2). Pursuant to his Plea Agreement, both the defendant and the government are requesting a total sentence of 27 years (324 months). The U.S. Probation Officer has recommended a sentence of 30 years (360 months). For the reasons set forth below, the United States believes that a sentence of 27 years is appropriate in this case.

## OFFENSE CONDUCT

The records in this case reveal the following, which is not in dispute:

At all times relevant to this matter, an enterprise known as La Mara Salvatrucha, also known as the MS-13 gang (hereafter "MS-13"), existed. MS-13 is an international gang that has members and operates in, among other places, El Salvador, Mexico, Honduras, and the United States. MS-13 members are a group of individuals associated in fact who are engaged in, and the activities of which affect, interstate and foreign commerce. The enterprise is engaged in, and its activities affect, interstate and foreign commerce, in that, among other things: members of MS-13 travel across state and international lines in order to attend gang meetings at which gang business is discussed; MS-13 members use cellular telephones to make calls to "big homies" – that is, gang leaders – in El Salvador to discuss gang business, including obtaining authorization to punish gang members for violations of gang rules, or even to "green light" – that is, to kill – gang members believed to be cooperating with law enforcement; members of MS-13 traffic in controlled substances; and members of MS-13 transport guns and ammunition across state lines for use in attacking gang rivals. MS-13 constitutes an ongoing organization whose members function as a continuing unit for a common purpose of achieving the objectives of the enterprise. Among other crimes, MS-13 members are involved in murder, assaults, other acts of violence, obstruction of justice, and witness tampering.

The defendant was jumped into MS-13 in El Salvador in 1991, and from that date and continuing to the present, he agreed to conduct and to participate in the conduct of the affairs of the gang through a

pattern of racketeering activity.  He agreed that a conspirator would commit at least two acts of racketeering in the conduct of the affairs of MS-13, including acts involving:  (i) murder, conspiracy to murder, and attempted murder; (ii) obstruction of justice; and (iii) tampering with witnesses and attempting to tamper with witnesses.

Since at least April 2011, the defendant has been a member of MS-13 in the United States, using the gang moniker "Trucha" or "Yomo."  To maintain and increase his position in MS-13, he agreed that a member of MS-13 would kill members of rival gangs – for instance, gang members called Norteños – and others who defied or betrayed MS-13, such as individuals who cooperated with law enforcement against the gang.

Beginning on or about June 20, 2010, and continuing into the early hours of June 21, 2010, the defendant and other MS-13 members took a "Mission 14 line" bus from San Francisco toward Daly City.  The defendants brought with him a loaded firearm in a backpack.  They saw an apparent Norteño get on the bus and then sit down near them.  The defendant later learned that the victim's name was Alexander Temaj-Castanon.  The defendant got off the bus before the end of the line, and one of his co-defendants asked him to leave the backpack with the loaded firearm with the co-defendants.  The defendant knew the firearm would be used to shoot and try to kill the apparent Norteño, and he gave his co-defendants the backpack intending that they would use the gun to do so.  Alexander Temaj-Castanon died as a result of his gunshot wounds.

With respect to the violation of 8 U.S.C. § 1326, the following facts are not in dispute:

At all times material to the charge, the defendant has been and is a native and citizen of El Salvador.  In or about April 2001, he voluntarily and knowingly entered the United States, and knowingly remained in the United States, without first obtaining the consent of the Attorney General of the United States or the Secretary of the Department of Homeland Security for an application for his admission.  On or about July 24, 2003, in the State of Virginia, he was convicted of a felony offense of robbery, which qualifies as a conviction for a felony crime of violence for purposes of sentencing.  On or about January 7, 2004, he was removed from the United States and returned to El Salvador.  Prior to April 5, 2005 (when he was arrested in Houston, Texas) he voluntarily and knowingly entered the United States, and knowingly remained in the United States, without first obtaining the consent of either

the Attorney General of the United States or the Secretary of the Department of Homeland Security to his application for admission to the United States. In or about June 9, 2005, he was removed from the United States and returned to El Salvador. Subsequently, he voluntarily and knowingly entered the United States, and continuing until in or about February 2011, he knowingly remained in the United States, without first obtaining the consent of either the Attorney General of the United States or the Secretary of the Department of Homeland Security to his application for admission to the United States.

## LEGAL STANDARD AT SENTENCING

Under Ninth Circuit case law, the Court should impose a sentence sufficient, but not greater than necessary, to reflect the purposes of sentencing that Congress identified in 18 U.S.C. § 3553(a)(2). *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). The Court should begin the process of determining an appropriate sentence by calculating the correct guidelines range. *Carty*, 520 F.3d at 991.

Although the guidelines are not binding, they "reflect a rough approximation of sentences that might achieve section 3553(a)'s objectives." *United States v. Rita*, 127 S. Ct. 2456, 2464 (2007). The guidelines range will be the starting point and the initial benchmark for the sentence. *Carty*, 520 F.3d at 991. The Court should keep the guidelines range in mind throughout the process, allow the parties to argue for a sentence they believe is appropriate, and consider the factors identified in 18 U.S.C. § 3553(a). *Id.*

If the Court imposes a sentence outside the guidelines range, it should ensure that its justification for deviating from the range is sufficiently compelling to support the degree of variance in the sentence that it imposes. *Carty*, 520 F.3d at 991. The Court should make an individualized determination based on the facts of each case. *Id*. The Court, however, is not required to raise every possible relevant issue sua sponte. *Id*.

**I.**

## 324 MONTHS IMPRISONMENT IS THE APPROPRIATE SENTENCE

**A. The Correct Guidelines Range Is 324-405 Months**

**1. The Guidelines Calculation**

The government believes that the following sentencing guidelines calculation is correct as to the violation of 18 U.S.C. § 1962(d):

|     |                                                          |     |
| --- | -------------------------------------------------------- | --- |
|     | a. Base Offense Level, U.S.S.G. § 2E1.1(a):              | 43  |
|     | b. Adjusted Offense Level:                               | 43  |

The government believes that the following sentencing guidelines calculation is correct as to the violation of 8 U.S.C. § 1326:

|     |                                                          |     |
| --- | -------------------------------------------------------- | --- |
|     | a. Base Offense Level, U.S.S.G. § 2L1.2:                 | 8   |
|     | b. Specific Offense Characteristic, U.S.S.G. § 2L1.2(b)(1)(A) | +16 |
|     | c. Adjusted Offense Level:                               | 24  |

The government believes that the offense group as follows:

|     |                                                          |     |
| --- | -------------------------------------------------------- | --- |
|     | a. Combined Adjusted Offense Level:                      | 43  |
|     | b. Acceptance of Responsibility:                         | -3  |
|     | c. Combined Total Offense Level:                         | 40  |

The violation of 924(j)(1) requires the imposition of a 10-year sentence consecutive to any other term of imprisonment.

**2.    The Defendant's Criminal History Category Is CHC III**

The Probation Office correctly calculated the defendant to have a Criminal History Category of III.  (PSR ¶ 93.)

**3.    The Correct Guidelines Range Is 360 - Life**

The Guidelines range for Offense Level 40 and CHC III is 360 months to life.  USSG, Ch. 5, Part A - Sentencing Table.

**B.    324 Months Imprisonment Is An Appropriate Sentence Considering The Nature And Circumstances Of The Offense And The History And Characteristics Of The Defendant**

The government believes that a 27 year (324 month) term of imprisonment for this 35 year-old defendant is appropriate in this case.  The government has reached this conclusion after a careful consideration of all of the facts of this case, consultation with the family of the victim, and lengthy negotiations with counsel for the defendant.

As set forth in detail in the PSR, the defendant conspired to murder a man simply because he believed that man to be a member of a rival gang.  The defendant did so in order to secure and advance his standing in his own gang, MS-13.  For these reasons, and the reasons set forth in the PSR, the

proposed sentence of 27 years is sufficient, but not greater than necessary, to reflect the purposes of sentencing that Congress identified in 18 U.S.C. § 3553(a)(2).

The U.S. Probation Officer recommends a sentence of 360 months, the low end of the applicable Guidelines Range. The defendant's guidelines range is higher than that of his co-defendants because of his additional criminal history, which is a factor the Court should consider in fashioning the appropriate sentence. However, the government believes that the Court should also take into account the defendant's role in the offense. Unlike the two co-defendants, the defendant did not actually shoot the victim. Indeed, he was not present when the victim was murdered. On the other hand, as discussed above and in the PSR, the defendant provided the murder weapon with the knowledge and intent that it be used to commit the murder. That fact, along with his criminal history, supports a sentence of the same duration as the co-defendants – 27 years.

## **CONCLUSION**

For the reasons set forth above, the government respectfully requests that the Court sentence the defendant to 324 months imprisonment, followed by five years of supervised release with the terms and conditions as recommended in the PSR.

DATED: October 15, 2014 　　　　　　　　　MELINDA HAAG
　　　　　　　　　　　　　　　　　　　　　　United States Attorney


　　　　　　　　　　　　　　　　　　　　　　　  /S/
　　　　　　　　　　　　　　　　　　　　　　ANDREW M. SCOBLE
　　　　　　　　　　　　　　　　　　　　　　MATTHEW L. McCARTHY
　　　　　　　　　　　　　　　　　　　　　　Assistant United States Attorneys